IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMILE TOKA SILE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09 C 5053 |
| ) | |
| JANET NAPOLITANO, Secretary of U.S. ) | |
| Department of Homeland Security, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' motions for summary judgment. For the reasons stated below, we grant Plaintiff's motion for summary judgment and deny Defendants' motion for summary judgment.

## BACKGROUND

The facts in this case are unique. Plaintiff Emile Toka Sile (Sile) was born in Cameroon in 1959. In July 1994, Sile entered the United States as a visitor and subsequently applied for asylum in the United States. On December 28, 1995, an immigration judge granted Sile's application for asylum. Before Sile was granted

asylum status in the United States, he had a pending application filed on October 6, 1995, to immigrate to Canada. In 1996, Sile received notification from the Canadian Consulate General that his application to immigrate to Canada had been completed, and Sile was issued an "Immigrant Visa and Record of Landing" and instructed that he must present such documents at a Canadian port of entry before July 12, 1996. In June 1996, Sile was issued a United States Refugee Travel Document, which Sile contends he used together with his Canadian Immigrant Visa to visit Canada on June 15, 1996. Upon entering Canada, Sile was considered a Landed Immigrant by the Canadian Government. Three weeks later, on July 7, 1996, Sile attempted to return to the United States as an asylee (an alien who has been granted asylum status in the United States). However, the former Immigration and Naturalization Service (INS) refused to admit him to the United States as an asylee, but deferred his inspection into the United States. This meant that Sile was physically allowed to remain in the United States while the INS made a decision relating to Sile's admissibility to the United States as a returning asylee.

On January 3, 1997, the INS placed Sile in Exclusion Proceedings by issuing Sile a Form I-122, Notice to Applicant for Admission Detained for Hearing before Immigration Judge. INS, in part, contended that Sile became a Landed Immigrant in Canada in June 1996, when he visited Canada, and as a result, Sile's "Application for

Political Asylum in the United States" was terminated.  The INS's characterization of Sile in the charging document, as an applicant for asylum, was incorrect since Sile at the time was not an applicant for asylum, but had already been granted political asylum in the United States on December 28, 1995, by an immigration judge.

On January 6, 1998, an immigration judge held a hearing on the charges by the INS.  During the Exclusion Proceedings, the judge entered an order, which stated "[a]fter considering the facts and circumstances of this case and as there is no opposition from the parties, it is HEREBY ORDERED that these proceedings be terminated." (Jan. 1998 Order).  Sile then was re-admitted as a returning asylee to the United States.  At no time was Sile's asylum status terminated, nor did Sile receive any notice of intent to terminate his asylum status in the United States.  In fact, on June 18, 2009, Sile was issued a Refugee Travel Document as an individual with a valid asylum status.  As of this date, the Defendants concede that Sile has a valid asylum status in the United States, which has never been terminated.

On January 18, 2000, Sile, as an asylee, filed a Form I-485, Application to Adjust Status, with the U.S. Citizenship and Immigration Services (CIS), one of the successor agencies to the INS, to adjust his status to lawful permanent residence status under 8 U.S.C. § 1159(b).  Six and a half years later, on August 18, 2006, the CIS denied Sile's application, classifying Sile as an alien firmly resettled in Canada

when Sile went to Canada for three weeks in 1996, and thus, ineligible to adjust his status to permanent residence. On September 15, 2006, Sile filed a motion to reconsider the denial. Approximately three years later, on July 17, 2009, the CIS "dismissed" Sile's motion to reconsider. In August 2009, Sile brought the instant action pursuant to the Mandamus Act, 28 U.S.C. § 1361, the All Writs Act, 28 U.S.C. § 1651, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*, and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*. Sile and Defendants have filed motions for summary judgment.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1361 of the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.*; *see also* 28 U.S.C. § 1651 (explaining authority of courts to issue writs). Pursuant to 5 U.S.C. § 706 of the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A); *Head Start Family Educ. Program, Inc. v. Cooperative*

*Educational Service Agency*, 11 46 F.3d 629, 633 (7th Cir. 1995) (explaining limited scope of review of agency decisions); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984)(explaining deference accorded to agency decisions).

**DISCUSSION**

Sile argues that Defendants' classification of Sile as an alien firmly resettled in Canada in 1996, thus barring him from adjustment of status to permanent residence, was in violation of the law since Sile was granted asylum in the United States in 1995, and his asylee status has never been terminated. Pursuant to 8 U.S.C. § 1158, an alien cannot be granted asylum unless the alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). Also, pursuant to 8 U.S.C. § 1158, an alien cannot be granted asylum if the alien is firmly resettled in another country, and if granted asylum, it is subject to revocation. 8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.14(d)(2)(effective January 1, 1997); 8 C.F.R. § 208.13(c)(2)(i)(B)(effective currently). Pursuant to 8 U.S.C. § 1159(b), an alien who is granted asylum cannot adjust to permanent resident status if the alien (1) does not apply for adjustment, (2) is not physically present in the United States for one year after being granted asylum, (3) is no longer a refugee, (4) is firmly resettled in another country, and (5) is

inadmissible to the United States as an immigrant. 8 U.S.C. § 1159(b); 8 C.F.R. § 209.2(a)(1)(i-v). There are therefore five prerequisites to adjustment before adjustment of status can even be adjudicated on the merits and a discretionary determination made. If an asylee does not meet prerequisites (1), (2), and (5), the alien still has asylum status in the United States. For example, an alien who has asylum status in the United States might decide not to file for adjustment of status under prerequisite (1), or if an asylee does not have one year presence in the United States, the alien can still keep the asylum status, or if an asylee is disqualified under one of the admissibility grounds, the alien might still be able to keep his or her asylee status. However, if an alien is no longer a refugee or is firmly resettled under prerequisites (3) and (4), the alien under the above referenced statutes cannot have asylum status. These two bars, (3) and (4), for adjustment of status go to the heart of asylee status in the first place.

  There are two issues that are relevant to Sile's request for mandamus and review under the APA: (I) whether the doctrines of res judicata and collateral estoppel apply on the issue of firm resettlement, and (II) whether CIS's classification of Sile as an alien firmly resettled in Canada, and thus ineligible for adjustment of status, is arbitrary and capricious.

I. Doctrines of Res Judicata and Collateral Estoppel

Sile contends that the CIS's classification of Sile as firmly resettled in Canada, and thus ineligible for adjustment of status, is contrary to the law and principles of res judicata and collateral estoppel. In effect, Sile is arguing that INS/CIS should be collaterally estopped from considering Sile as firmly resettled in another country because the issue of firm resettlement was presented by the INS to the immigration judge in 1997 in Exclusion Proceedings and the immigration judge terminated the proceedings. Defendants contend that the analysis regarding firm resettlement as it relates to Sile's application for adjustment of status is separate and distinct from the analysis of firm resettlement on Sile's status as an asylee. Under the doctrine of collateral estoppel, a party is "prevent[ed] from relitigating issues that have already been litigated and decided." *Aaron v. Mahl*, 550 F.3d 659, 665 (7th Cir. 2008). In order for the doctrine of collateral estoppel to be applicable: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)(internal quotations omitted)(quoting *Meyer v. Rigdon,* 36 F.3d 1375, 1379 (7th Cir. 1994)); *See, e.g., Hukic v. Aurora*

*Loan Services*, 588 F.3d 420, 431 (7th Cir. 2009).

The parties have not presented a transcript, if any, of the January 6, 1998, Exclusion Proceedings. The facts relating to INS's decision to place Sile in Exclusion Proceedings upon his return from Canada are contained in the INS's charging document and involved the INS's belief that Sile had firmly resettled in Canada when he visited Canada for three weeks in 1996. Therefore, the INS believed that Sile was not admissible to the United States as an asylee. The issue in this case is firm resettlement and the prior litigation before the immigration judge was also based on allegations of firm resettlement. The immigration judge's decision terminating the Exclusion Proceedings clearly states that the judge considered all the facts and circumstances of the case in terminating the INS's charges against Sile. Therefore, the issue of firm resettlement was actually litigated. The immigration judge's termination of the Exclusion Proceedings, during which INS alleged that Sile was firmly resettled in Canada and therefore not admissible to the United States, was essential to the final judgment. Sile in fact remains as an asylee in the United States. The CIS's predecessor, the INS, was fully represented in the Exclusion Proceedings before the immigration judge. The INS lost the case before the immigration judge, and not only did the INS not appeal the judge's decision, the INS in fact did not object to the decision.

In addition, the doctrine of res judicata "bars the relitigating of claims if the cause of action has been fully and finally determined on the merits between the same parties by a court of competent jurisdiction." *Aaron v. Mahl*, 550 F.3d 659, 664 (7th Cir. 2008). As indicated above, the issue of firm resettlement was litigated during the Exclusion Proceedings. Even if the issue of firm resettlement was not actually litigated, the doctrine of res judicata "bars not only those issues actually decided in the prior suit, but all other issues which could have been brought." *Id.* There is no dispute that the INS placed Sile in Exclusion Proceedings in 1997, contending that he was firmly resettled in Canada in 1996. During the Exclusion Proceedings, the INS had a full opportunity to litigate the issue of Sile's alleged resettlement. Thus, the doctrine of res judicata is applicable as well. Therefore, the CIS is collaterally estopped in classifying Sile as ineligible for adjustment of status on the ground of firm resettlement in Canada in 1996.

II. Classification of Sile by CIS as Ineligible for Adjustment of Status

Sile also contends that his asylum status was never revoked and that CIS's classification of Sile as an asylee, but ineligible for adjustment of status as an alien firmly resettled in another country is contradictory. Defendants argue that the CIS's denial of Sile's application for adjustment of status was made in accordance with the

law and based on the evidence of record.

### A. Whether Sile's Asylum Status Has Been Properly Terminated

The current regulations in 8 C.F.R. § 208.22 provide that "[a]n alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to § 208.24." 8 C.F.R. § 208.22. The current regulations in 8 C.F.R. § 208.24(f) provide procedures for the termination of a grant of asylum by an immigration judge as follows:

> (f) Termination of asylum, or withholding of deportation or removal, by an immigration judge or the Board of Immigration Appeals. An immigration judge or the Board of Immigration Appeals may reopen a case pursuant to § 3.2 or § 3.23 of this chapter for the purpose of terminating a grant of asylum, or a withholding of deportation or removal. In such a reopened proceeding, the Service must establish, by a preponderance of evidence, one or more of the grounds set forth in paragraphs (a) or (b) of this section. In addition, an immigration judge may terminate a grant of asylum, or a withholding of deportation or removal, made under the jurisdiction of the Service at any time after the alien has been provided a notice of intent to terminate by the Service. Any termination under this paragraph may occur in conjunction with an exclusion, deportation, or removal proceeding.

8 C.F.R. § 208.24(f). The law and regulations in effect at the time of Sile's re-entry into the United States in 1996, and in 1997, when Sile was placed in Exclusion Proceedings, also contained provisions and procedures relating to revocation of asylum status. The Code of Federal Regulations, effective January 1, 1996, and

January 1, 1997, in 8 C.F.R. § 208.24(f), provided mechanisms for the revocation of an asylum grant. If the asylum grant was by an immigration judge, the revocation of that asylum grant was solely under the jurisdiction of the immigration judge and it could take place in conjunction with Exclusion or Deportation Proceedings. 8 C.F.R. § 208.24(f)(effective January 1, 1997). In such proceedings, the INS had the burden to establish by the appropriate standard of evidence that one or more of the grounds existed under Section 208.24(a) or (b). Section 208.24(a)(2) provided for the revocation of asylum if "the alien has committed any act that would have been grounds for denial of asylum under § 208.14(d)." Section 208.14(d)(2) provided for denial of asylum if "the applicant has been firmly resettled within the meaning of § 208.15." Section 208.15 contained the definition of "firm resettlement." Under 8 C.F.R. § 208.22(a), INS was required to take proper steps to revoke Sile's asylum status before attempting to exclude him or placing him in Exclusion Proceedings. To sum it up, if the INS believed that Sile's asylum grant by the immigration judge should be revoked because Sile had firmly resettled in another country, then the regulations required the INS to file a motion to reopen the hearing before the immigration judge for the purpose of revoking Sile's asylum status. *See* 8 C.F.R. § 208.24(f)(effective January 1, 1997). The INS, however, attempted to exclude Sile when Sile returned from Canada in 1996, contending that Sile firmly resettled in

Canada, and placed Sile in Exclusion Proceedings.  The immigration judge, after considering all the facts and circumstances, terminated the Exclusion Proceedings without objection by the parties.  This meant that the INS did not sustain its charges against Sile.

After the immigration judge terminated the Exclusion Proceedings, Sile kept his asylum status in the United States and was eligible to apply for permanent residence in the United States.  Defendants, in fact, concede that Sile has had asylum status in the United States for the last 14 years, and that such status was never terminated.  The problem is that CIS is now telling Sile that he firmly resettled in Canada 14 years ago when Sile visited Canada in 1996 for three weeks, and thus is statutorily barred from adjusting status to permanent resident.

Obviously, if INS had attempted to properly terminate Sile's asylum status and followed proper procedures to do so before the immigration judge, Sile would have had an opportunity to oppose INS's efforts to have his asylum status revoked.  However, the INS did not take any steps to properly revoke Sile's asylum status before the immigration judge and CIS, the INS's successor, has not done so either.  Thus, Sile remains an asylee in the United States indefinitely.

### B.  Classification of Sile as Both an Asylee and as Firmly Resettled

Sile also argues that he is an asylee, and it would be inconsistent on the Defendants' part to contend that Sile is an asylee and at the same time firmly resettled in another country.  The CIS's classification of Sile both as an asylee and as an alien firmly resettled in another country is incongruous.  Both, immigration laws and regulations, in 8 U.S.C. § 1158 and 8 C.F.R. § 208, clearly provide that an alien who has been firmly resettled in another country is subject to mandatory denial of asylum status and, if granted asylum, is subject to having that status revoked.  8 U.S.C. § 1158(b)(2)(A)(vi); 8 C.F.R. § 208.14(d)(2)(effective January 1, 1997); 8 C.F.R. § 208.13(c)(2)(i)(B)(effective currently).

This court provided the Defendants' counsel an opportunity to confer with the Defendants on the issue of proper termination of Sile's asylum status.  Subsequently, Defendants' counsel reported that Defendants were not taking any steps to terminate Sile's asylum status, and that it was Defendants' position that Sile was still an asylee in the United States.

Defendants have argued that Sile as an asylee has employment authorization and the right to remain in the United States indefinitely.  However, there is a major distinction between the right to indefinitely remain in the United States as an asylee and the right to live in the United States as a permanent resident.  An immigration

judge granted Sile both Withholding of Deportation and asylum in the United States. Under the INA, an alien who has been granted Withholding of Deportation (also known as Withholding of Removal or Restriction of Removal), 8 U.S.C. § 1231(b)(3)(A), cannot be deported to a specific country, but the grant of Withholding of Deportation does not lead, in and of itself, to permanent resident status in the United States. However, the granting of asylum allows an alien to live in the United States permanently, but more importantly leads to permanent resident status after one year and eventual United States citizenship. 8 U.S.C. § 1158(a). The position Sile finds himself in leaves him in a state of legal limbo, in which he is unable to have his application for permanent resident status properly adjudicated. The position advocated by Defendants, which classifies Sile as both an asylee and as an alien firmly resettled in another country, is not only contrary to the laws passed by Congress and the implementing regulations, but would also result in creating an entirely new class of aliens not contemplated by statutes or regulations. Sile either has an asylum status in the United States or does not have an asylum status in the United States. If Sile, as the CIS contends, is firmly resettled in another country, then Sile would be ineligible under the INA to have asylum status in the United States. CIS concedes that Sile has had a valid asylum status in the United States for the past 14 years. As such, it follows that CIS cannot contend both that Sile has been

firmly resettled in another country and that Sile still has asylum status in the United States.  Based on Defendants' representations that Sile has asylum status in the United States, and further based on Defendants' representations that Sile's asylum status has not been revoked and Defendants have no intentions to revoke it after 14 years, the court finds that, under the facts of this case, CIS's classification of Sile as an asylee ineligible to adjust on the grounds of firm resettlement is arbitrary and capricious.  We therefore grant Sile's motion for summary judgment and deny Defendants' motion for summary judgment.

Having already ruled on the parties' motions for summary judgment, we observe in passing that CIS took six and a half years to tell Sile that he is ineligible for adjustment of status, and another three years to deny Sile's motion to reconsider the CIS's decision.  Sile has had no opportunity to exercise his right to renew his application for permanent residence in the ten years that have passed since Sile first requested permanent resident status.  The regulations in 8 C.F.R. § 209.2(f)(effective January 1, 1997) and the current regulations in 8 C.F.R. § 209.2(f) provide that if an asylee's application of permanent residence status is denied, the applicant shall be notified of the decision and the reasons for the denial, and that no appeal shall lie from the denial, but that such denial will be without prejudice to the alien's right to renew the application in proceedings before the immigration court.  CIS has denied

Sile's application for permanent residence as an asylee in a cursory statement that he is barred to adjust because of firm resettlement in Canada in 1996, and has notified Sile of the decision. The regulations provide that the CIS's denial of Sile's adjustment of status to permanent residence application cannot be appealed, but that the application can be renewed in immigration court proceedings. For Sile to be able to renew his application, he must somehow find himself in immigration court proceedings. This is unrealistic since the CIS has conceded that Sile remains an asylee in the United States. Therefore, Sile has been unable to exercise a regulatory right, which was intended as a benefit to him. Sile's inability to exercise such regulatory right is prejudicial to him. This is a Catch-22 situation. On one hand, the fact that CIS still classifies Sile as an asylee cannot logically be construed as something against Sile's interest. On the other hand, the denial of Sile's application for adjustment of status and his inability to renew such application, as provided by regulations, is against Sile's interest.

## CONCLUSION

Based on the foregoing analysis, we grant Sile's motion for summary judgment and deny Defendants' motion for summary judgment. We find that CIS's finding that CIS's classification of Sile as firmly resettled in Canada in 1996, and

thus ineligible for permanent resident status, is arbitrary and capricious. We note that there was no adjudication on the merits of Sile's adjustment of status application because Defendants classified Sile as firmly resettled in another country and for that reason ineligible for adjustment. We order the CIS to take appropriate steps within the next 180 days to reopen Sile's application for permanent resident status, and the CIS is collaterally estopped from premising a denial of eligibility on grounds of firm resettlement in Canada in 1996. Our decision is limited solely to the unique circumstances in this unusual case. We do not make any finding as to other aspects of statutory eligibility since such is not before this court. We further express no opinion on the discretionary adjudication of Sile's application for permanent resident status, as we do not have jurisdiction to review such a matter.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 12, 2010